Our first case up this morning is 4-18-0-8-1-5. In re N.L. The appellant is Cheryl Varughese. Pardon? Varughese. And for the appellee is Kathy Shepard. Ms. Varughese, you may proceed. Good morning, your honors, and may it please the court. Counsel? Counsel, my name is Cheryl Varughese. I'm from the office of State Appellant Ember, and I represent N.L. Before we begin today, I'd like to inform the court that the state contacted OSAD at 4 p.m. yesterday after I had already left the state. Excuse me, who did? The state. After I had already left the office, I informed the legal secretary that he would be raising a new argument for the first time during oral argument today. The state did not explain the new argument, and despite the fact that the reply brief was filed almost a month ago, the state did not ask for me to file a supplemental brief addressing this new argument. The state did explain this argument, did approach me this morning and explained this argument to me, and it is indeed a new argument that we have not made. O.S. Supreme Court Rule 341, H. 7 provides that points not argued are waived and shall not be waived for the first time in oral argument. Therefore, pursuant to Rule 341, H. 7, we ask that this court find the state to complete this argument and prohibit the state from waiving it for the first time on appeal during oral argument. Alternatively, we ask that this court is not going to strike the argument that this court there does need to file supplemental briefs on the issue. Well, it's a little bit difficult for us to respond since we don't know what it is. I'll hear what Ms. Shepard has to say in your remarks and then see what the panel wishes to do. Yes, Your Honor. Due to the argument, today unless the court has questions on the remaining arguments, I'll be focusing on the arguments concerning the probation conditions in Adolf's case. Turning to the improper delegation argument, this court has provided the trial court a clear road map to follow when imposing probation conditions. In Peoples v. Warder, this court held that because of the provision of probation conditions prior to sentencing, the trial court must impose any probation conditions at the sentencing hearing. Further, this court held that the trial court may not delegate that authority to any third party, including the court services department. As a road map, this court advised trial courts to impose probation conditions by 1. signing at the sentencing hearing the sex offender probation order that contains a probation condition, 2. informing the defendant that the court is imposing special probation conditions, 3. explaining the special conditions to the defendant, including why the court is imposing them, and 4. giving a copy of that order to the defendant. Yet, in Enel's case, the trial court did not follow this court's four-part directive. As in Warder, the trial court here ordered Enel to cooperate with all additional conditions of sex offender probation slash high-risk probation, but the court did not sign a probation order that contained those additional conditions. Further, the court did not describe those additional conditions to Enel, explain why it was imposing them in his case, or provide him a copy of those additional conditions. The only reference to those additional conditions, other than the written order of conditions, was when a probation officer informed the court that Mr. White was not monitoring this case and Enel would be placed on high-risk probation. The probation officer advised that when Mr. White returned, that would be set up. Wasn't there more of a discussion than that? At the sentencing hearing, didn't the prosecutor agree with the recommendations of the court services department with regards to a general term of probation and additional requirements that the Sex Offender Probation Act requirements would be appropriate? And didn't defense counsel say, we were joining the recommendation of court services and the state? Yes, Your Honor. Defense counsel did join with the recommendations of court services. Why doesn't that waive, not forfeit, why doesn't that waive the argument you're now making? Assuming for the moment this might be error, but if defense counsel at the time acquiesces in it, then how can you now raise it on appeal? Your Honor, at most, defense counsel acquiesces to the conditions themselves, the sex offender probation conditions, not even the high-risk probation conditions. But there is nothing in the record to suggest that defense counsel acquiesced to the trial court's improper delegation of its authority to the court services department to impose those specific conditions. Were you supposed to infer from the state's statement that they are agreeing with the recommendations of the general term of probation and the additional requirements under the Sex Offender Probation Act, and then counsel's comment that he joins in the recommendations of both court services and the state? Your Honor, first, all they recommended was the general term of probation, so defense counsel definitely did not acquiesce to high-risk probation. The first time high-risk probation was referred in this case was when the probation officer was talking about it with the court. But even if defense counsel did acquiesce to specific sex offender probation conditions being imposed, that didn't mean that the trial court didn't have to specifically impose them. Well, here's the problem, counsel. We're a panel of the appellate court, but in our earlier lives, we were trial judges. And I'm not sure what the numbers are, but I think I'm pretty sure we have three decades' worth of trial court service. So that's where our sympathies lie. And in viewing ourselves as trial judges here, it seems to me that I don't think we're inclined to parse the language used by lawyers to try to figure out, well, is this what he's really saying, as opposed to just take these words in their normal fashion as, if I were back in the trial court, and the judge here, and I heard the recommendations of the prosecutor, including these additional conditions, and defense counsel would say, yeah, we would join that recommendation. Being anxious not to have this kid sent to kid's prison, as I like to call it, so this is something that he would like, I think that's how I would understand the remarks of defense counsel. And I don't see why, from the point of view as an appellate judge, we should view it differently. Your Honor, because this doesn't cite anything that suggests there are specific conditions in the Illinois Sex Offender Probation Act. As far as we can tell, there are sex offender probation conditions listed in the adult probation conditions section, but those were not specifically imposed in this case. The trial court did specifically impose, and did incorporate into the record, that it would be expected, announced by, by pages 12 and 13 of the sex offender evaluation, treatment providers' recommendations, and those conditions were properly imposed. But these other conditions under the Illinois Sex Offender Probation Act were not specifically imposed. So counsel, remind me, there's an actual sex offender probation order, form, that's being referred to at the time of sentencing? Your Honor, from what I can tell, this is obviously outside the record, but when we saw that these additional conditions had been imposed, I reached out to NL's probation officer, and he informed me that there was actually an order with these additional forms, that he had signed off on, and that NL had signed off on, but that the judge had not signed off on. Which is why we filed a motion to compel in this case, because he informed me that after the court order, I could not get a copy of that. And even if I had gotten a copy of that, pursuant to people we borrowed, it's questionable whether we could have supplemented it. So is it known or unknown whether or not the high-risk probation conditions are on the form this county uses? Your Honor, it's unknown to me at this time, which is why we asked this court to re-amend this case to have a hearing pursuant to Alonzo O, to determine if the sex offender... A hearing pursuant to what? Pursuant to Inmate Alonzo O. In that case, this court actually found that because juveniles are not given the advantage of the Post-Conviction Hearing Act, that in certain cases, which is ineffective assistance of counsel, this court would re-amend it back for that to be cleared up in the trial court. Thus, we ask this court to... What's to be cleared up? To clear up whether the trial court, whether court services had actually imposed the conditional conditions of sex offender slash high-risk probation. Even if this court finds that defense counsel did acquiesce to the sex offender probation conditions, there's no indication that he acquiesced to the high-risk probation conditions. In fact, in the court services recommendation, it refers to general standard conditions of probation, and there's no explanation as to why Adon, who's never been charged or adjudicated of a different crime, was put on high-risk probation in this case. So, because there's no real clarity on whether these conditions are different than sex offender probation conditions, we ask that this court receive jurisdiction in the hearing act for that very limited purpose, because without that, Adon has no remedy to cure a potentially improper sentence. Thank you. You may proceed. Thank you, Your Honor. Turning to the next argument, the trial court here ordered 14-year-old Adon to have no unsupervised contact with minors under 13 years of age. This probation condition is overbroad, and thus, unuseful, because the trial court did not identify any common-sense exceptions based on familial or educational relationships. Further, there's no explanation as to what entails supervision, and no explanation as to what type of contact, no matter how innocuous, will result in a probation violation. In a similar case, in Ray Omar F., the First District held that the probation condition ordered the juvenile to stay away and have no contact with gang members, and to remove all social media posts in which he appears with gang members were unreasonable. There, the Fifth District found that the no gang contact provision was a valid condition of probation, because it was reasonably related to the respondents' rehabilitation. But, it concluded that the probation conditions, as articulated by the trial court, were overly broad, and thus, unreasonable. The First District's primary concern with the probation conditions was that there were no exclusions for people based on familial employment or educational relationships, and no explanation as to what type of contact will result in a probation violation. Do you see any distinction between the fact that in Omar, the request is to have no contact with gangs who were not victims of any offense, whereas in this case, the request, the direction is that there should be no contact between women under the age of 13, because the victims in this case were in the age of 13. Yes, Your Honor, there is a difference there, but we ask this court to find that this case does parallel Omar, in the fact that believing that probation condition was too broad was because Chicago was gang infested. Why doesn't it parallel People vs. RH, which came out of the same court, just a different panel, that said that references to gangs and drugs and guns and social media exclusions is okay? Your Honor, in RH, RH is actually distinguishable, because in that case, the respondent did not challenge the no contact condition. The respondent only challenged the condition restricting him from posting about gangs, guns, or drugs on social media. Thus, that was more reasonable. In this case, the concern is 14-year-old Anal is being told to stay away from minors under 13 years of age while he's in middle school. Unsupervised. But there's no explanation as to what is unsupervised contact. It's especially troubling because his brother is 12 years old. So every probation order, under your theory, every probation order would then have to specify every incident which would constitute supervised and every incident which would constitute unsupervised, if you use that term. Is that true? No, Your Honor. We just ask for more parameters so that Anal can go about his life knowing when he's actually violated his probation condition. So the court gives you more parameters, and then you say, but that's not specific enough. And we just keep going down this same rabbit hole. We have to specify it down to an infinite point, apparently, is what your argument is. So that there can be no possibility that anybody could misconstrue what this condition was as if the probation officers are mindless and incapable of administering this condition. No, Your Honor. What we're asking for, or what our concern is, to be specific, is that because he's in middle school, we're concerned that if he goes to the restroom alone and a minor under 13 years of age comes in after him, is that unsupervised contact because there's no one in that bathroom with him? Or if he's in the locker room changing for gin and there are minors under 13 years of age, is that unsupervised contact because there's no one with him? Similarly, when he's all alone with his brother, 12-year-old, is that unsupervised contact if his parents are in the home with him, if not in the same room, or are there restrictions? So there'll be a geographic restriction, too, within so many feet, outside of so many feet, in the same room, in the same house. You see, I don't see the difference between what you're saying and the example I just gave, that no matter how specific we get it, under your theory, it'll never be specific enough because there will always be some possibility that we can put together a set of facts that will fall outside that specific description. So in other words, we can never impose these conditions because we'll never be able to whittle it down to a point where you are absolutely sure, under every single circumstance, within the written order itself, outside the discretion of the probation department, the state, or the court, whether those conditions can be met. No, Your Honor, because we don't require to be staff-specific, but there needs to be... Well, you just said in your example that if the parents are in the room or if the parents are outside of the room... Even if a general restriction of supervision would still be more reasonable in this case because it would still be a question of whether it's reasonable. It's not simply... Even if every single situation is not spelled out in a probation position, it must still have the parameters, especially for a juvenile, to know exactly how to conduct himself in order to avoid violating his probation... Isn't that the argument this court specifically rejected in Morger? Your Honor, we don't do that in Morger. In people who do Morger, it's different because in that case, the defendant was more than five years older than the victim. By the time this court actually looked at that issue, the defendant was 24 years old and he was being told to stay away from any... Was that a fact that this court cited as making a difference in its decision in Morger? No, Your Honor. But at the same time, the reason that the First District found in the Inmate OMRF that this probation condition was too broad was the idea that Chicago is being infested. And similarly, in this case... OMRF was decided almost a year after Morger, wasn't it? Your Honor, yes, it was. Did OMRF cite or discuss Morger? No, Your Honor. But we'd argue that every condition should be able to face and look back to the case and the defendant or the respondent in front of this court to see whether the condition is reasonable for that specific individual. And in this case, because of the small age differential between him and the person that he is not supposed to have contact with, he will constantly be near them or around them on a daily basis in school. So we would posit that this is an unreasonable condition for someone in his position because this prohibits him from joining after-school activities. The other thing that's different about this case and Morger was that in Morger, this court cited the fact that the defendant could get approval from his probation officer or from his treatment officer to join a sex act. But in this case, there is no common-sense exception in which an adult can get approval from his probation officer to join into an after-school activity that might include minors under the age of 13. There isn't? The probation department is not capable of making that determination? Your Honor, the probation department is capable of making that determination, but there's nothing written into this condition itself that would allow for it. That's why we have petitions filed and we have motions filed and then the state either expresses that agreement or disagreement and that doesn't happen all the time. Yes, Your Honor, but this case came up on appeal and so on appeal, this is our responsibility to identify this as an unreasonable condition and to bring it to this court's attention before an adult is forced to do so in a trial court. And thus, we ask this court to find that that condition is unreasonable and to vacate it outright or to send it back to the trial court to include common-sense exception. Further, we rely on our opening of the trial court   Thank you, Your Honor. Thank you, Counsel. Ms. Shepard? To start off with what happened yesterday, it was at 3.40 that I called the public attorney's office about an argument that you touched on right off the bat, Justice Steinman, and that was affirmative waiver. We argued that as to Issue 5 involving the additional probation conditions that Respondent argues the court delegated its authority to the court services to impose. We did not argue it as to Issue 1. It does apply to Issue 1. I'm sorry, not Issue 1. The issue that deals with the no-contact probation condition. Defense Counsel explicitly said that he would join, we would join in the recommendations of court services in the state that said, court services is the one, the entity that prepared the social justice report. And in that report they recommended the very no-contact provision that is at issue in this case that refrain from having contact with children under the age of 13. So it's affirmatively waived. We did not argue that as to Issue 1 in our brief. I did, Albert, opposing counsel to this this morning as soon as I got the report. We understand that forfeiture applies to the state as well. So this court need not or may not recognize this argument but it is another basis on which you can decide the case and not even reach that issue. So, as to the no-contact provision, it is constitutional, it is reasonable. In order to find otherwise, this court would have to overrule its decision in Morger. What about the distinction that Ms. Varghese just made that I wrote Morger but I have to concede it's been a while back and the cases have been in the blur. The distinction that there was a provision in Morger about how the probation office or somebody could permit this visitation but there wasn't any such provision in the probation order in this case. Is that correct? I don't remember. In other words, it was just the argument counsel just made. But in Morger, there was this provision and then Justice E. Arben says, well, even if there was, you could always seek to change it by a petition or seek the approval of the probation officer if any of these circumstances counsel described were to arise. But, in fact, I don't remember if in Morger there was specific language saying that absent approval of the probation officer. What was that? The exemption Pardon? The exemption in Morger said that there have contact with Gee, I have it here. Do not have contact with or attempt to have contact with any persons under the age of It also says, regardless of familial relationship, which is relevant to our case, unless approved by the probation officer and the treatment provider. So, under that, the respondent would have to get approval from the probation officer and treatment provider to have such contact. So, this court in Morger found that the fact that there was an exemption made in the condition constitution didn't delve into the specifics and whether there were hypothetical situations where that might cause a problem. Omar F. and J.W., the cases on which opposing counsel revised, found that there was a problem with the conditions in those cases because there was no exemption. Here we have an exemption. And so, it's for supervised contact under Morger and contrary to Omar F. or distinguishable from Omar F. and J.W. So, there was an exemption in the order of this case similar to Morger? Yes, it was the same type of exemption, but it was an exemption. That is, under some supervision or approval or some kind by the probation officer? Prohibited from having unsupervised contact with minors under 13. So, the exemption is supervised. It's okay. So, it's constitutional. We don't get into the specifics of different hypotheticals. And the test for determining the constitutionality of a probation condition, which might impair the probationer's constitutional rights, isn't judged by hypotheticals. It's judged by, as the Supreme Court stated in J.W., they said that to be reasonable, a condition of probation must not be overly broad when viewed in the light of the desired goal or the means to that end, and it's appropriate to consider whether the value to the public in imposing the condition manifestly outweighs the benefit to the public. You touched upon something I think that we haven't drilled down on in this hearing, and that is the reason for the conditions, and that is in the Alonzo O. case, which counsel relies on heavily, it had to do with gangs, and it was very broad, where in this particular case it is to protect potential minors from being further victims. So I think it's, like you say, a balancing test, and it's something I'd like you to further expand upon, whether or not it's the reasonableness and balancing that with what protections the condition is trying to put forth. Yes, and we did touch on this in our brief, that yes, the unlikely, and Justice Yarmulke was arguing that the purpose of the limitation, the no conduct condition in OMRF was in, it was not to protect the class of people that the respondent was prohibited from having contact with. It was not to protect gang members. Here in our case, this no contact condition is aimed at protecting the class of persons that he's not supposed to have contact with. Minors under 13, and minors in that age group are limited in their ability to recognize and protect themselves from harm. They're particularly vulnerable, particularly vulnerable   Yarmulke has repeatedly assaulted his eight-year-old niece, A.W., and so he's demonstrated that he has a predilection to prey on those very vulnerable minors. And the probation condition at issue here furthers the goal of protecting young minors from sex offenders, offenders committed by respondent, and does that in circumstances in which sex offenses are most likely to occur when others are not around. So it requires the supervision portion of the condition not only provides an exemption, but it narrowly, it protects, it also furthers the goal of protecting  from  offenders. And that's a particularly important thing to consider in this balancing test, and that certainly would outweigh any infringement on respondent's constitutional rights, and there is exemption. So his rights are not impermissibly or unusually infringed. We also argue that the respondent reported this, second problem plan error doesn't apply, Lewis is the only authority that Omar F. cites in stating that there was second problem plan error, and it does not, it's distinguishable, it does not support either Omar F. or respondent in that it's a different sort of error that was at issue in Lewis, and that had to do with the imposition of a fine without evidence, which the court    has decided that was not the case. So for those reasons, and for all the other reasons that we argued were brief, we would simply ask the court to confirm. Okay, thank you counsel. Ms. Verghese, any questions? I have a question about the state's argument that the exemption state forfeit, they didn't waive it. The Supreme Court in some of the rules and statutes use things about waiver when the more recent discussion make it clear they mean forfeiture. The waiver being the intentional relinquishment of a known right. That's not what happened in this case. Because I'm the guy who started all of this 20 years ago, I continue to be very sensitive about the difference between waiver and forfeiture. We ask that this   court set forth a litany of circumstances in which it would be okay and others would not be okay for NL to do certain things short of this listing that they would not be constitutional. Your Honor, we're arguing that there has to be more parameters in what's going       that the court set forth   of circumstances  it would be okay for NL to do certain things short of this listing that they would not be okay for NL to do certain things   listing we're arguing that there are certain parameters put in place responsible such as getting prior approval. That's one of the conditions in Dixon. The ordinal no longer reside in south elgin was perfectly reasonable, but the fact that the juvenile was banished from south elgin with no opportunity of coming back without getting prior approval, that was unreasonable. And that's what we're asking for in this case is that there are these parameters where if he gets prior approval from his condition doctor or from his treatment doctor,  not going to be supervised by the probation department. The state's obviously not going to be filing a petition to revoke since the probation department has already approved that the conduct is permissible. So we're providing a remedy for a problem that doesn't exist. And then we ask that this court then send it back to the trial court to include that language within the written commission because as the commission has written right now, we cannot simply know that he needs to go to the probation office to get prior approval. There needs to be some kind of parameter that allows him to continue to live his life being around minors under the age of 13 years without being worried that he's going to violate his probation on a daily basis. Therefore, we ask this court to vacate the commission outright or send it back to the trial court to include certain exemptions such as prior approval from the probation office. Thank you, counsel. Thank you, Samantha, and I'm going to be in recess.